**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Sunil Nayyar | : | |
| | : | Case No. 2:10-cv-00135-ALM-NMK |
| Plaintiff, | : | |
| | : | Judge Marbley |
| v. | : | |
| | : | Magistrate Judge King |
| Mount Carmel Health System, et al., | : | |
| | : | |
| Defendants. | : | |

**<u>DEFENDANTS' STATUS REPORT</u>**

On April 1, 2011, the Court ordered the parties to report on the status of this case. Defendants Mount Carmel Health System, Dr. John Weiss, and Dr. Li Tang report as follows.

**I.      <u>BACKGROUND</u>**

Plaintiff was a medical resident whom Defendant Mount Carmel terminated in January of 2009 because he engaged in unprofessional behavior.  Plaintiff filed this action in state court on November 24, 2009.  He amended the complaint to add federal claims on February 16, 2010, and Defendants removed the case to this Court, where Plaintiff ultimately amended again.  Plaintiff's Second Amended Complaint contains eight counts: (1) retaliation in violation of Ohio law and public policy; (2) retaliation in violation of Ohio's whistleblower statute; (3) intentional infliction of emotional distress; (4) race, national origin, and ancestral discrimination in violation of Title VII and Section 1982; (5) spoliation of evidence; (6) race, national origin, and ancestral discrimination in violation of Ohio Revised Code §§ 4112.01 and 4112.02; (7) retaliation in violation of 31 U.S.C. § 3730(h); and abuse of process.

At the outset of the case, this Court denied Plaintiff's request for a temporary restraining order, and the parties began preparing for a preliminary injunction hearing that was set for March 3, 2010.  Prior to that date, Defendants took a portion of Plaintiff's deposition, but the deposition

was cut short so that the parties could discuss settlement possibilities.  Ultimately, the parties agreed to put discovery on hold while Defendants attempted to assist Plaintiff in finding a medical resident position in another program.  Despite work by both parties, that effort ultimately proved unsuccessful.

In August, the Court granted Plaintiff's motion to expedite the case schedule, and set new, truncated dates.  In October, the parties exchanged documents and began attempting to schedule depositions.  Then, in the fall and winter, Mr. Patmon had surgery and was out of the office recovering for an extended period of time.  The Court extended the case schedule, setting a June 6, 2011 trial date.  The parties attempted to complete discovery after Mr. Patmon's return to work, but were hard pressed to schedule all necessary discovery in time for dispositive motions to be filed, briefed, and decided before the trial date.

The parties met with Magistrate Judge King regarding this dilemma on February 9, 2011.  During that conference, Plaintiff's counsel stated to Defendants and to Magistrate Judge King that Plaintiff wanted to dismiss the case without prejudice and re-file it.  The same day, Defendants consented to the dismissal and asked Plaintiff's counsel to send a draft stipulation of dismissal to Defendants' counsel for review.  (Exhibit A, p. 3, e-mail of February 9, 2011).  Plaintiff's counsel replied, "Ok."  *Id.*

On February 16, when Defendants had not received a draft of the stipulated dismissal to review, Defendants' counsel contacted Plaintiff's counsel and again asked him to send a draft stipulation, so that the parties could keep momentum going in the case.  (Exhibit A, p. 2, e-mail of February 16, 2011).  Plaintiff's counsel responded, "I am working on the dismissal.  I will have it done soon."  (Exhibit A, p. 1, e-mail of February 17, 2011).

Five days later, Defendants still had not received the stipulation, so Defendants' counsel contacted Plaintiff's counsel again and asked him to send the draft stipulation for review sometime that day. (Exhibit A, p. 1, e-mail of February 22, 2011). Plaintiff's counsel replied that he was "Out on vacation until Wednesday" (i.e., Wednesday, February 23), and said he would contact Defendants' counsel when he returned. *Id*. He did not; so, on Friday, February 25, in order to move the dismissal along, Defendants' counsel drafted a stipulation of dismissal and sent it to Plaintiff's counsel for his review. (Exhibit B, e-mail of February 25, 2011). Plaintiff's counsel replied that he would review the draft. *Id*.

Defendants did not hear from Plaintiff regarding the draft, and on March 16, 2011, Mr. Bricker, one of Plaintiff's attorneys, filed a notice of withdrawal. Because it seemed odd that Mr. Bricker would withdraw from a case that was about to be dismissed, Defendants' counsel again contacted Plaintiff's counsel about the dismissal. (Exhibit C, p. 1-2, e-mail of March 16, 2011, 12:01 p.m.). Plaintiff's counsel responded that there had been a death in his family and he had not been able to file the dismissal, but Plaintiff's counsel expressly stated: "I can assure you that the dismissal will be filed." (Exhibit C, p. 1, e-mail of March 16, 2011, 12:19 p.m.).

## II.  **STATUS**

On April 1, 2011, the dismissal still had not been filed, and the Court ordered the parties to file status reports by today, April 6, 2011. Yesterday, April 5, 2011, at 5:24, p.m., Plaintiff's counsel send Defendants' counsel an e-mail flagged with "high importance" that said: "Filing dismissal entry today." (Exhibit D, e-mail of April 5, 2011, 5:24 p.m.). Then, at 6:12 p.m., Plaintiff's counsel sent an e-mail that at first appeared to seek consent for changing the document from a stipulation to a joint motion (to which Defendants do not object). (Exhibit E, e-mail of April 5, 2011, 6:12 p.m.).

3

However, the e-mail then states that Plaintiff's counsel could not recommend the dismissal to his client, and that "in final analysis," he might instead file a status report and seek a new case schedule in the current case. *Id*. This was the first time Plaintiff's counsel had *ever* mentioned the possibility of not filing the dismissal. Prior to this e-mail, Plaintiff's counsel had *never* informed Defendants that he was "researching the legal effect of dismissal and re-filing of this action," as claimed in his Status Report. (*See* Plaintiff's Status Report, Doc. No. 46, p. 2). To the extent that Plaintiff's status report makes it appear that Plaintiff's counsel made such a statement *prior to* April 5, 2011, at 6:12 p.m., Plaintiff is misrepresenting facts to this Court. *See id*. Defendants were blindsided by the April 5, 2011 e-mail.

Defendants' counsel spoke with Plaintiff's counsel several times during the day on Wednesday, April 6, 2011. Plaintiff's counsel indicated for the first time that his client did not wish to file the dismissal, because he was concerned that the Ohio Savings Statute would bar the timely re-filing of Plaintiff's retaliation claim under the Ohio Whistleblower Statute, R.C. 4113.52, which requires claims to be filed within 180 days of the occurrence.

The Ohio Savings Statute provides in pertinent part that:

In any action . . . if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

R.C. 2305.19. Defendants do not believe that the Savings Statute would bar re-filing of Plaintiff's Whistleblower claim. Nevertheless, Defendants offered to stipulate to the timeliness of all re-filed claims, and did so in writing. (Exhibit F, e-mail and letter of April 6, 2011).

Despite this assurance, Plaintiff's counsel has indicated that Plaintiff is now refusing to file the dismissal. Plaintiff's counsel stated his belief that two Ohio Supreme Court cases make doing so "risky" with respect to timeliness of the whistleblower claims: *United Telephone Credit*

*Union v. Roberts*, 115 Ohio St. 3d 464 (2007) and *Vitantonio, Inc. v. Baxter*, 116 Ohio St. 3d 195 (2007).  Plaintiff is misapprehending those cases, which are completely inapplicable to this situation.

*United Telephone* held that Ohio's Savings Statute did not apply to an action challenging the appointment of a conservator under R.C. 1733.361, "because its application would adversely affect the administration of the conservatorship."  115 Ohio St. 3d at 471.  No such concerns are applicable here, as there is no ongoing conservatorship being administered.  *Vitantonio* is equally inapplicable.  That case held that the Savings Statute *does* apply to actions filed against a decedent's estate after the executor has rejected a claim.  116 Ohio St. 3d at 198.  Defendants fail to see how that holding has any applicability to the instant case whatsoever.  As the Court in *Vitantonio* noted, the  Ohio Savings Statute is a "broad statute of general application."  *Id*.

Setting aside for a moment the fact that Plaintiff's alleged concerns come too late, as he has been representing for almost two months that he intends to dismiss the case, reliance on these cases to justify not filing the agreed-upon dismissal makes no sense.  This is particularly so in light of the state and federal case law holding that the Ohio Savings Statute *does apply* to claims under the Ohio Whistleblower Statute, R.C. 4113.52.  *Dargart v. Ohio Dep't of Transp.*, 871 N.E.2d 608 (Ohio Ct. App. 2006); *Rubin v. Ford Motor Company*, No. C-1-04-836, 2005 WL 1126814 (S.D. Ohio May 12, 2005).

In *Dargart*, the plaintiff filed his R.C. 4113.52 whistleblower retaliation claim within 180 days of his termination, then dismissed it without prejudice and was allowed to re-file it within one year under R.C. 2305.19.  871 N.E.2d at 610-11 (holding that the plaintiff could not then re-file the claim a third-time after a second dismissal).  In *Rubin*, the plaintiff filed his R.C. 4113.52 whistleblower retaliation claim within 180 days of his termination, then dismissed it without

5

prejudice and re-filed it within one year.  Judge Weber expressly held that this filing was timely under R.C. 2305.19, finding that where the claim was dismissed on November 13, 2003, "plaintiff had until Monday, November 15, 2004, to refile the whistleblower claim."  2005 WL 1126814, at *4-5 (November 13, 2004 was a Saturday).  In light of this precedent, Plaintiff's late protestations about the risks of dismissal are unfounded.  It could not be more clear that the Savings Statute would permit the re-filing of the whistleblower claim within one year of a dismissal without prejudice.

Defendants have relied to their detriment on Plaintiff's multiple representations that the case would be dismissed.  Because of those repeated assurances, the parties did not complete discovery, did not appear for a scheduled mediation with Robert Kaiser, and Defendants did not file a dispositive motion (the dispositive motion deadline has already passed).  Now, Plaintiff is refusing to dismiss the case as Plaintiff represented to the Magistrate Judge and to Defendants that he would.  This will result in clear prejudice to Defendants, who have missed out on the opportunity for essential discovery and dispositive motion practice.

Making material misrepresentations to the Court and opposing counsel can be grounds for sanctions.  *See R.S.C., Inc. v. S.M.E. Cement, Inc.*, 845 F.2d 327, 1988 WL 40079, at *8 (6th Cir. 1988).  As the Sixth Circuit stated in *R.S.C.*, where a party misrepresented the unavailability of one of its officers for a deposition, "making misrepresentations to a court is a serious matter . . . and the trial court did not abuse its discretion in imposing sanctions here."  *Id*.  Here, Plaintiff has represented to the Court and to Defendants that he would dismiss the case without prejudice, and Defendants have detrimentally relied on that statement.  Plaintiff should not be permitted to carry out an act of misrepresentation by now failing to dismiss the case.

6

As Plaintiff would be free to re-file all of his claims (even his Title VII claims, because he received his right-to-sue letter less than 90 days ago), dismissal will cause Plaintiff no prejudice.  Accordingly, Defendants request that the Court enforce the parties' agreement and dismiss the case without prejudice.

Respectfully submitted,

/s/ M.J. Asensio
M. J. Asensio (0030777), Trial Attorney
Kristopher J. Armstrong (0077799), Of Counsel
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
(614) 228-1541
(614) 462-2616 (facsimile)
masensio@bakerlaw.com
karmstrong@bakerlaw.com

Attorneys for Defendants Mount Carmel Health
System, Dr. John Weiss, and Dr. Li Tang

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

William Patmon, III
Patmon, LLC
4100 Regent St., Suite U
Columbus, Ohio 43219

Attorney for Plaintiff

/s/ Kristopher J. Armstrong
Attorney for Defendants