Not Reported in F.Supp.2d, 2007 WL 1795957 (S.D.Ohio)
**(Cite as: 2007 WL 1795957 (S.D.Ohio))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Ohio,
Eastern Division.
Emory CHILES, Plaintiff,
v.
Officer SCOTT, Sgt. Fogul, individually and in their official capacities, Defendants.

No. 2:06-cv-0579.
June 20, 2007.

Emory Chiles, Glenville, WV, pro se.

Curtis Franklin Gantz, Monica L. Waller, Lane Alton & Horst LLC, Matthew Blaine Baker, Ohio Patrolmen's Benevolent Association, Columbus, OH, for Defendants.

*OPINION AND ORDER AND REPORT AND RECOMMENDATION*
TERENCE P. KEMP, United States Magistrate Judge.

**\*1** This matter is before the Court on a motion for appointment of counsel (doc. # 16) and a motion for order compelling discovery (doc. # 17) filed by the plaintiff, Emory Chiles. Also before the Court are a motion to dismiss or for partial summary judgment (doc. # 20) and a second motion for summary judgment (doc. # 24) filed by the defendants, Todd Scott and Jason Fogle FN1 (collectively known as "defendants"). For the following reasons, the motion to compel will be denied. Further, the Court recommends that the defendants' motion to dismiss or for partial summary judgment be granted and the second motion for summary judgment be denied. The motion to appoint counsel is granted on the conditions outlined herein.

FN1. The Court notes that the defendant's last name is Fogle, not Fogul as the case caption suggests.

Because the standards of review differ when evaluating the merits of a motion to dismiss versus a motion for summary judgment, the Court will analyze each motion individually in the light of the evidence required by those rules.

*I. Mr. Chiles' Motion to Compel (doc. # 17)*

Mr. Chiles requests the Court to compel Messrs. Scott and Fogle to produce certain documents and answer what appears to be Mr. Chiles' second set of interrogatories. In response, the defendants argue that they have already answered Mr. Chiles' first set of interrogatories, which exceeded 75 questions. Additionally, they contend that under Rule 33 Mr. Chiles is prohibited from serving more interrogatories without leave of court or written stipulation. The defendants also claim that a motion to compel is inappropriate because Mr. Chiles did not serve the request for the production of documents listed in his motion to compel on the defendants prior to filing the motion.

Rule 33 states, in pertinent part, that "[w]ithout leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts...." Fed.R.Civ.P. 33(a). It appears from the record that Mr. Chiles served, and the defendants answered, his first set of interrogatories. As the defendants point out, additional interrogatories, without stipulation or leave of court, are prohibited under Rule 33. Further, nowhere in the record is there any indication that Mr. Chiles previously requested document production prior

Not Reported in F.Supp.2d, 2007 WL 1795957 (S.D.Ohio)
**(Cite as: 2007 WL 1795957 (S.D.Ohio))**

to filing the motion to compel. Therefore, Mr. Chiles' motion to compel will be denied.

*II. Second Motion for Summary Judgment (doc. # 24)*

The defendants argue that summary judgment is appropriate because Mr. Chiles failed to produce evidence that he suffered injury as a result of the alleged assault. The defendants also contend that there are no genuine issues of material fact surrounding whether the defendants' actions constituted unnecessary or wanton infliction of pain in violation of the Eighth Amendment.

A.

The following facts are taken from Mr. Chiles' deposition, as well as answers to interrogatories. Mr. Chiles was incarcerated at the Jefferson County Jail in August 2004. Soon after arriving, Mr. Chiles was treated for depression and was placed on suicide watch. However, other than a few hours in a detox cell, he was never placed in a separate medical facility.

*2 In September 2004, Mr. Chiles allegedly began engaging in disruptive outbursts. On September 22, 2004, an incident report indicates that Mr. Chiles pushed his cell door open causing it to slam against the wall. Mr. Chiles also expressed his disagreement with the Jefferson County Jail's lock-down procedures. According to his deposition, the incident report states that Mr. Chiles shouted: "This is fucked up. Treating us like fucking kids. Why the hell you keeping us fucking locked down so long, mother fuckers." (Dep. of Mr. Chiles at p. 41). The report also indicates that Mr. Chiles used profanity towards a correction officer. (*Id.*) Mr. Chiles denies all the events except slamming his cell door against the wall.

Additionally, on September 24, 2004, an incident report indicated that Mr. Chiles was kicking the door to his cell, which allegedly set off an alarm. Further, the report stated that Mr. Chiles was in a highly agitated state and screaming about not going to court or meeting with his attorney. The report also indicated that Mr. Chiles threw a bolt against his cell door and shouted that he wanted to be escorted to booking and placed in a suicide suit. Mr. Chiles does not recall kicking his cell door but does admit to the other events in that report. (*Id.* at 49-51).

The event that is the subject of this litigation allegedly occurred on September 26, 2004. According to the record, in the morning of that day, after Mr. Chiles received his breakfast, he subsequently threw his breakfast tray, full of food, out through the food service slot. (*Id.* at p. 56). Mr. Chiles stated that he did this because there was a hair in his eggs and the jail did not provide him with a new dish.

In response to this action, Messrs. Scott and Fogle, as well as another officer, Shawn Livingston, went to Mr. Chiles' cell. The parties dispute what happened next. According to the defendants, when they arrived at Mr. Chiles' cell, he was sitting on his bed, holding his shoes and screaming. (Answers of Defendant Todd Scott to Plaintiff's First Set of Interrogatories, Number 5(a)). The defendants claim that Mr. Chiles was "highly agitated, unreasonable, aggressive, yelling, swearing and threatening" while the defendants were calm in their attempt to calm Mr. Chiles. (*Id* . at Number 5(d)). Because of Mr. Chiles' alleged behavior and the fact that he was on suicide watch, the defendants shot a short burst of mace into Mr. Chiles' face to restrain him. (*Id.* at Numbers 6(a)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1795957 (S.D.Ohio)
**(Cite as: 2007 WL 1795957 (S.D.Ohio))**

and 7(d)). According to the defendants, no one physically touched Mr. Chiles. (*Id.* at Number 7(e)).

However, according to Mr. Chiles, when the defendants arrived at the cell, Mr. Chiles was calm and sitting on his bed with his shoes on. (Dep. of Mr. Chiles at pp. 63-64). While he was seated and explaining to the officers why he threw the breakfast tray out of the food slot, Mr. Scott maced him without any provocation. (*Id.* at 65). Mr. Chiles recounts that he was maced for at least five seconds, or until Mr. Scott emptied his can. (*Id.*) Subsequently, according to Mr. Chiles, Mr. Fogle began assaulting him by striking him on the back. (*Id.* at p. 67). This was followed by Mr. Scott repeatedly kicking and punching him. Mr. Chiles was not bleeding and there was no apparent bruising. (*Id.* at p. 76). Mr. Chiles requested medical attention but that request was rejected. (*Id.* at pp. 77-79). He complained of having breathing problems, a dislocated shoulder (because he was unable to move it) and pain in his back. (*Id.* at pp. 99-101).

**\*3** According to Mr. Chiles, he was taken to the hospital on September 27, 2004. (*Id.* at pp. 97-98). However, a medical report indicates that he was admitted to the hospital's emergency room on September 28, 2004, (Second Motion of Defendants Todd Scott and Jason Fogle for Summary Judgment, Ex. A). Mr. Chiles testified that he was taken to the emergency room because his back "gave out" while trying to reach the television. (Dep. of Mr. Chiles at pp. 101-04). He could not move and was in pain all over his body. Mr. Chiles explained that his back problems were the result of his alleged assault by Messrs. Scott and Fogle. A medical examination revealed discomfort in his right shoulder and lower back but there were no obvious fractures or dislocations. (Second Motion of Defendants Todd Scott and Jason Fogle for Summary Judgment, Ex. A). Additionally, there was no bruising and his breathing was normal. (*Id.*)

B.

Fed.R.Civ.P. 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)(emphasis in original); *Kendall v. The Hoover Co.,* 751 F.2d 171, 174 (6th Cir .1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson,* 477 U.S. at 248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... [ and where] no genuine issue remains for trial, ... [ for] the purpose of the rule is not to cut litigants off from their

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1795957 (S.D.Ohio)
**(Cite as: 2007 WL 1795957 (S.D.Ohio))**

right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 467 (1962); *accord, County of Oakland v. City of Berkley,* 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Anderson,* 477 U.S. at 250.

The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745, n. 11 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

**\*4** Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970) (footnote omitted); *accord, Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455-56 (6th Cir.1984), *cert. denied,* 469 U.S. 1062 (1985). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes,* 398 U.S. at 157-60; *Smith v. Hudson,* 600 F.2d 60, 65 (6th Cir.), *cert. dismissed,* 444 U.S. 986 (1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251. As is provided in Fed.R.Civ.P. 56(e):

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judg-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

ment motion made against him." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 259 (1968)(footnote omitted).

C.

It is a "settled rule" that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment," which is forbidden by the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (internal quotation marks and parenthesis omitted). "What is necessary to establish an unnecessary and wanton infliction of pain," however, "varies according to the nature of the alleged constitutional violation...." *Id.* (internal quotation marks omitted).

**\*5** If the alleged constitutional violation involves an assault on an inmate by a prison guard, like the allegation in this case, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. The Court noted:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

*Id.* at 9-10 (internal citations and quotations omitted). To determine whether an inmate's assault allegation violates the Constitution, "a court must consider the reasons or motivation for the conduct, the type of force used, and the extent of the inflicted injury." *Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir.1993)(citing *Whitley v. Albers,* 475 U.S. 312, 320-22 (1986)).

The Court turns to the Court of Appeals' holdings in *Moore, Thaddeus-X v. Love,* No. 98-2211, 2000 WL 712354 (6th Cir. May 22, 2000)(unpublished), and *Carlton v. Turner,* No. 05-1009, 2006 WL 955886 (6th Cir. Apr. 12, 2006) (unpublished), for guidance on whether summary judgment is appropriate. In *Moore,* an inmate alleged that he was assaulted three separate times by prison guards the day following a disturbance at the prison. The prison guards argued that the inmate was restrained with physical force as part of the prison personnel's attempt to regain control of the prison. The Court of Appeals concluded that granting summary judgment was inappropriate because genuine issues of material fact existed. The court stated, in relevant part:

> The day of the disturbance is critical in this case. According to Moore, the disturbance had ceased the day before the assault. If this is true, the Supreme Court's Eighth Amendment analysis for prison disturbances is not applicable. In contrast, if the disturbance existed when the assault occurred, the district court's analysis under *Hudson* and *Whitley* would be correct.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Another decisive issue of material fact that exists concerns the incident itself. Moore proffered evidence that he was subject to numerous beatings without reason. Defendants countered with evidence that Moore became disruptive and that his injuries were a result of a fall. Whether or not Moore was a victim of an assault is critical to his Eighth Amendment claim.

*6 * * *

Moore claims that he was savagely beaten on three occasions by the defendants for no reason. Under the *Hudson* and *Whitley* doctrine, Moore's evidence would appear to show that defendants acted in bad faith. In contrast, defendants essentially claim that Moore's injuries were a result of a fall. If defendants' allegations are true, Moore was not subjected to malicious or sadistic behavior. Thus, the cause of Moore's injury impacts his Eighth Amendment claim, thereby preventing the issuance of summary judgment for the defendants.

The final issue of fact that exists is Moore's role in the disturbance. The defendants contend that Moore participated in the disturbance. Moore disputes this claim. This fact is material for it reflects on the reasonableness of defendants' actions under the circumstances. As previously noted, defendants' actions are evaluated as to whether the force they used was a good faith effort to maintain or restore discipline, or was malicious and sadistically imposed to cause harm. Because the question of whether Moore was a participant in the disturbance influences the legal analysis as to the reasonableness of defendants' actions, this disputed fact also prevents the issuance of summary judgment for the defendants.

*Moore,* 2 F.3d at 700-01 (internal citations omitted).

In *Thaddeus-X,* an inmate alleged that a prison guard used excessive force because the inmate threatened to file a grievance. The Court of Appeals concluded that summary judgment in favor of the prison guard was not appropriate. The court stated, in pertinent part:

Thaddeus-X has presented evidence, in the form of his affidavit, that the defendant maliciously and wantonly inflicted pain on him. Thaddeus-X also has presented the affidavit of another prisoner, who avers that he witnessed the defendant slam the food slot door on Thaddeus-X's hand. In response, the defendant denies Thaddeus-X's allegation of excessive force, maintaining that he never closed this door because Thaddeus-X refused to move his hand from the slot. He also provides the affidavit of another corrections officer, who was present and avers that she did not see him close the door on Thaddeus-X's hand. From these conflicting affidavits, it is clear that a genuine issue of material fact exists regarding whether the defendant used improper force against Thaddeus-X.

The district court granted summary judgment on Thaddeus-X's excessive force claim because it determined that Thaddeus-X had not suffered a significant injury for Eighth Amendment purposes and the defendant's action only involved a de minimis use of force. In the days following the alleged incident, prison medical personnel examined Thaddeus-X's hand, noted abrasions and swelling, and prescribed pain medication. The district court concluded that these injuries were de minimis and insufficient to support Thaddeus-X's excessive force allegations.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1795957 (S.D.Ohio)
**(Cite as: 2007 WL 1795957 (S.D.Ohio))**

Abrasions, pain, and swelling, however, may be sufficient injury to support an Eighth Amendment claim where, as here, there are genuine fact issues concerning the cause of plaintiff's injury and the justification for, and the reasonableness of, any force applied by defendant.

**\*7** *Thaddeus-X,* 2000 WL 712354, \*2.

Finally, in *Carlton,* an inmate alleged that prison guards assaulted him because he witnessed the prison guards assaulting another inmate. Again, the Court of Appeals concluded that there were genuine issues of material fact precluding the district court from granting summary judgment. The court opined:

Viewing the facts in the light most favorable to Carlton, they present a picture of unacceptable conduct. The officers assaulted him twice for relating what he had seen during an altercation between prison guards and another inmate, apparently in an effort to induce him to change his story to coincide with the guards' version of events. Seated and handcuffed, in a room with no other inmates and with three prison officials present, Carlton could not have posed a threat to the officers' (or anyone else's) safety. While not every malevolent touch by a prison guard gives rise to a federal cause of action, and while de minimis uses of physical force do not support a cognizable Eighth Amendment claim, that is not all that happened here. According to Carlton's allegations, the plural assaults drew blood, and even if the resulting injury was minor (as Carlton's acknowledges), that fact does not preclude him from stating a cognizable Eighth Amendment claim in all settings.

What makes this injury and claim cognizable under the Eighth Amendment is that officers provided no legitimate explanation for using force. While we will excuse exercises of force applied in a good-faith effort to maintain or restore discipline, the officers did not provide any justification for their conduct.

*Carlton,* 2006 WL 955886, \*2-3 (internal citations and quotations omitted).

Viewing the facts in a light most favorable to Mr. Chiles, it appears that prior to the incident in question, Mr. Chiles displayed some disruptive behavior. On September 22, 2004, Mr. Chiles slammed his cell door against the wall, and on September 24, 2004, he was agitated and wanted to be placed in a suicide suit. Further, on September 26, 2004, because Mr. Chiles discovered a hair in his egg, he pushed his breakfast tray out of the food slot, which spilled his breakfast all over the floor.

Viewing the evidence in Mr. Chiles' favor, however, when Messrs. Scott and Fogle responded to the latest incident, they found a calm Mr. Chiles explaining why he rejected the breakfast tray. Apparently unsatisfied with Mr. Chiles' answer, Mr. Scott maced Mr. Chiles in his face. This was followed by repeated kicking and punching, which resulted in Mr. Chiles experiencing difficulty breathing and pain in his back and extremities.

Based on the record, the Court concludes that genuine issues of material fact exist with respect to whether Mr. Chiles' Eighth Amendment rights were violated. The defendants themselves highlight in their motion for summary judgment that there is a dispute among the parties regarding what happened in Mr. Chiles' cell on September 26, 2004. (Second Motion of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1795957 (S.D.Ohio)
**(Cite as: 2007 WL 1795957 (S.D.Ohio))**

Defendants Todd Scott and Jason Fogle for Summary Judgment at p. 3). These disputed facts are critical to the Court's conclusion that summary judgment is inappropriate. On the one hand, the defendants paint a picture of a hostile and agitated Mr. Chiles kicking and screaming about a hair in his eggs. On the other hand, Mr. Chiles testified that he was calm and sitting on his bed when Messrs. Scott and Fogle assaulted him. This factual dispute strikes at the heart of determining whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See, e.g., Moore,* 2 F.3d at 700-01 ("As previously noted, defendants' actions are evaluated as to whether the force they used was a good faith effort to maintain or restore discipline, or was maliciously and sadistically imposed to case harm"); *Thaddeus-X,* 2000 WL 712354, *2 (because there was conflicting evidence among the parties regarding whether the guard slammed the inmate's hand in the food slot door, "it is clear that a genuine issue of material fact exists regarding whether the defendant used improper force"); *Carlton,* 2006 WL 955886, *3 ("While we will excuse exercises of force applied in a good-faith effort to maintain or restore discipline, the officers did not provide any justification for their conduct")(internal citations and quotations omitted).

**\*8** Additionally, the Court rejects any notion that Mr. Chiles' injuries were *de minimis* in light of all the circumstances surrounding the incident. *See Moore,* 2 F.3d at 700 ("To determine whether a claim of assault rises to a level of constitutional magnitude, a court must consider the reasons or motivation for the conduct, the type of force used, and the extent of the inflicted injuries"). The Court notes that Mr. Chiles' emergency room visit revealed some discomfort in his right shoulder and lower back. Moreover, Mr. Chiles complained of back pain immediately following the alleged assault. If what Mr. Chiles claims is true and a reasonable jury concludes that the defendants acted in bad faith, the injuries that Mr. Chiles sustained are sufficient to maintain an Eighth Amendment violation. *See, e.g., id.* at 700-01 (concluding that if an inmate's claims that he was "savagely" beaten on three occasions by the guards are true, under Eighth Amendment jurisprudence, the inmate's evidence would appear to show that defendants acted in bad faith even if the inmate's injuries were only *de minimis*); *Thaddeus-X,* 2000 WL 712354 ("While a de minimis use of force will not support an actionable claim, a plaintiff may recover even if he suffers only minor injury"); *Carlton,* 2006 WL 955886 ("According to Carlton's allegations, the plural assaults drew blood, and even if the resulting injury was minor (as Carlton acknowledges), that fact does not preclude him from stating a cognizable Eighth Amendment claim in all settings"). Accordingly, the Court recommends that the defendants' second motion for summary judgment be denied.

### III. Mr. Chiles' Motion for Appointment of Counsel (doc. # 16)

Mr. Chiles requests the Court to appoint counsel because he is indigent and proceeding *pro se* in a case that involves complex legal issues. The Court of Appeals has stated:

> [a]ppointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances. In determining whether exceptional circumstances exist, courts have examined the type of case and the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved.

*Lavado v. Keohane,* 998 F.2d 601, 605-06 (6th Cir.1993)(internal citations and quotations omitted).

In the instant case, Mr. Chiles is claiming an Eighth Amendment violation resulting from the allegedly unprovoked physical beating he received from Messrs. Scott and Fogle while incarcerated at the Jefferson County Jail in Steubenville, Ohio. Because the Court recommends that the defendants' motion for summary judgment be denied, the case has entered the final stages of litigation leading to trial where a *pro se* litigant will strongly benefit from having counsel.

The Court may not require an attorney to accept an appointment to represent a litigant in a civil case. *See Mallard v. U.S. District Court,* 490 U.S. 296 (1989). The Court can only request that an attorney meet with a party and enter an appearance if the attorney and the party come to an agreement about the representation. The Court will therefore make this request. Mr. Chiles will be advised when an attorney has agreed either to accept the case or desires to meet with him prior to making that decision. The Court notes, however, that appointment of counsel is conditional on a final ruling by the District Judge on the motion for summary judgment.

*IV. The Defendants' Motion to Dismiss or For Partial Summary Judgment (doc. # 20)*

**\*9** In the defendants' motion to dismiss or for partial summary judgment, they argue that the claims asserted against Messrs. Scott and Fogle, in their official capacity as employees of the Jefferson County Sheriff's Department, must be dismissed pursuant to Rule 12(b)(6) because Mr. Chiles failed to allege or present evidence that his injuries resulted from a Jefferson County Sheriff's Department policy or custom. For support, the defendants cite *Jenkins v. Sheriff's Dep't of Rutherford County, Tennessee,* No. 98-6539, 221 F.3d 1334, 2000 WL 875784 (6th Cir.2000)(unpublished).

In *Jenkins,* the prisoner-plaintiff alleged that he was attacked by three guards while incarcerated. Instead of suing the guards, however, the plaintiff brought suit against the sheriff and the sheriff's department. The Court of Appeals dismissed the case against both the sheriff and the sheriff's department because municipal entities "cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional violation." *Id.* at \*1 (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 691 (1978) and *Deaton v. Montgomery County, Ohio,* 989 F.2d 885, 889 (6th Cir.1993)).

A suit against Messrs. Scott and Fogle, in their official capacity, is essentially a suit against the Jefferson County Sheriff's Department. Thus, the only way for the Jefferson County Sheriff's Department to be liable for the actions of Messrs. Scott and Fogle, in their official capacity, is if there is a direct causal link between a Jefferson County Sheriff's Department policy or custom and the alleged constitutional violation. A review of the complaint reveals that Mr. Chiles failed to allege or mention any Jefferson County Sheriff's Department policy or custom under which Messrs. Scott and Fogle were acting when they allegedly assaulted Mr. Chiles. *See* Fed. R.Civ.P. 12(b)(6); *Conley v. Gibson,* 355

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

U.S. 41 (1957)(in motion to dismiss, a court must accept as true all well-pleaded allegations of the complaint and may dismiss the action only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief). Accordingly, accepting all the facts in the complaint as true, it is beyond doubt that Mr. Chiles can prove no set of facts that would entitle him to relief on his claims against Messrs. Scott and Fogle in their official capacities.

Moreover, viewing the facts in a light most favorable to Mr. Chiles, it appears that, according to Mr. Chiles' testimony, this was the only alleged incident of assault while he was incarcerated at the Jefferson County Jail. (Dep. of Mr. Chiles at p. 34). Further, there is no evidence that assault was a custom or policy of the Jefferson County's Sheriff's Department. Accordingly, the Court recommends that the defendants' motion to dismiss or for partial summary judgment be granted.

***10** While the defendants' motion to dismiss or for partial summary judgment is based solely on the argument that Mr. Chiles' injuries did not result from a Jefferson County Sheriff Department policy or custom, the Court reviewed other potential bases for municipal liability and concludes that, based on the allegations in the complaint and evidence in the record, Messrs. Scott and Fogle are not liable in their official capacity. *See, e.g., Gregory v. City of Louisville,* 444 F.3d 725, 753 (6th Cir.2006)(municipal liability for failure to train police officers); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)(municipal liability for failure to supervise); *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986)(actions by those with final decisionmaking authority can constitute official policy).

*V. Conclusion*

Based on the foregoing, Mr. Chiles' Motion to Compel (doc. # 17) is DENIED. Further, the Court RECOMMENDS that the Defendants' Motion to Dismiss or For Partial Summary Judgment (doc. # 20) be GRANTED and the Second Motion for Summary Judgment (doc. # 24) be DENIED. Mr. Chiles' motion for appointment of counsel (doc. # 16) is GRANTED conditioned upon the issuance of a final order by the District Judge overruling the motion for summary judgment.

If any party objects to the Recommendations contained herein, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo,* and also operate as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 f.2d 947 (6th Cir.1981).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1795957 (S.D.Ohio)
**(Cite as: 2007 WL 1795957 (S.D.Ohio))**

S.D.Ohio,2007.
Chiles v. Scott
Not Reported in F.Supp.2d, 2007 WL 1795957 (S.D.Ohio)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.