Westlaw.

Page 1

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

▷

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Tenth District, Franklin County.
Mary LESKO, Plaintiff-Appellant,
v.
RIVERSIDE METHODIST HOSPITAL, Defendant-Appellee.

No. 04AP-1130.
June 23, 2005.

**Background:** Former employee brought action against former employer, alleging she was discharged in violation of public policy and state whistleblower statute after she reported health and safety violations. The Court of Common Pleas, Franklin County, No. 03-CVH-7173, entered summary judgment for former employer, and former employee appealed.

**Holdings:** The Court of Appeals, McGrath, J. held that:
(1) former employer's policy required senior operating officer's final decision to be communicated to former employee in writing;
(2) termination decision was final for statute of limitations purposes on date it was made by senior officer rather than on date which former employee received the decision;
(3) former employee failed to allege any criminal offense and thus could not prevail on statutory whistleblower claims; and
(4) former employee failed to establish clear public policy, independent of whistleblower statute, which her discharge violated.

Affirmed.

Sadler, J., concurred separately with opinion.

**[1] Labor and Employment 231H ⇐ 840**

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(A) In General
            231Hk838 Manuals, Handbooks, and Policy Statements, Adverse Action Under
                231Hk840 k. Particular Cases. Most Cited Cases
    Former employer's policy, as stated in internal human resources manual, required senior operating officer's final decision on terminating former employee to be communicated to former employee in writing, although employee handbook did not contain such a requirement.

**[2] Limitation of Actions 241 ⇐ 58(1)**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or Defense
            241k58 Liabilities Created by Statute
                241k58(1) k. In General. Most Cited Cases
    Employer's decision to terminate former employee was final, for statute of limitations purposes, on date it was made by senior officer rather than on date which employee received the decision in writing, and thus former employee's whistleblower claim was not timely filed within 180-day

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

statute of limitations; internal human resources manual merely provided that the "senior operating officer or designee reviews the findings and recommendations of the review committee and issues a final decision" and that the "senior operating officer communicates the final decision to the employee in writing." R.C. § 4113.52(D).

**[3] Labor and Employment 231H 801**

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(A) In General
            231Hk799 Health and Safety
                231Hk801 k. Particular Cases in General. Most Cited Cases

    Former employee failed to allege any criminal offense and thus could not prevail on statutory whistleblower claims against former employer; former employee merely alleged she was terminated for reporting health and safety violations. R.C. § 4113.52(A)(1)(a).

**[4] Labor and Employment 231H 801**

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(A) In General
            231Hk799 Health and Safety
                231Hk801 k. Particular Cases in General. Most Cited Cases

    Former employee who was allegedly discharged in retaliation for reporting health and safety violations failed to establish clear public policy, independent of whistleblower statute, which her discharge violated, and thus could not prevail on claim for wrongful discharge in violation of public policy; former employee listed several statutes as "examples of statutes which protect workplace health and safety," but did not set forth clear public policy and merely reiterated that there are "clearly articulated adequate independent grounds in support of her claim for wrongful discharge in violation of public policy that were not contingent on her whistleblower claims." R.C. § 4113.52.

Appeal from the Franklin County Court of Common Pleas.Lorrie E. Fuchs, for plaintiff-appellant.

Baker & Hostetler, LLP, David A. Whitcomb and Matthew W. Hoyt, for defendant-appellee.

OPINION

MCGRATH, J.

(REGULAR CALENDAR)

\*1 {¶ 1} Plaintiff-appellant, Mary Lesko ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, Riverside Methodist Hospital ("appellee"). Appellant filed suit against appellee alleging that she was discharged in violation of Ohio's public policy, and Ohio's Whistleblower Statute, codified in R.C. 4113.52.[FN1]

> FN1. Appellant's amended complaint contained additional allegations. The trial court granted summary judgment in favor of appellee on all of appellant's claims. However, appellant has only appealed the trial court's decision to grant summary judgment to appellee on appellant's whistleblower and public policy claims. No other issues have been appealed. Therefore, we focus only on the whistleblower and public policy claims that are before this court.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

{¶ 2} On June 19, 1970, appellant was hired by appellee as a registered nurse. On August 21, 1999, appellant resigned her full-time employment with appellee to pursue employment with Grady Memorial Hospital ("Grady"). While employed at Grady, appellant remained as a "contingent" employee of appellee. This meant that appellant was eligible to fill-in when necessary, but was not guaranteed any hours of work. Appellant's employment at Grady lasted approximately 90 days. In November 1999, appellant inquired about coming back to work for appellee, and was subsequently allowed to return to appellee's employ. In the spring of 2000, appellant chose to retire so that she could withdraw her pension. Appellant re-applied for employment with appellee and was rehired in May 2000. Appellant remained employed with appellee until her termination, which is the basis of this litigation.

{¶ 3} Appellant contends that she was terminated in retaliation for reporting health and safety violations in the workplace in violation of R.C. 4113.52, and in violation of Ohio's public policy. Appellee asserts that appellant was terminated for behavioral problems that stem back to as early as 1990. In the trial court appellee moved for summary judgment claiming that appellant's whistleblower and public policy claims are barred because appellant did not comply with the statutory requirements of R.C. 4113.52. Specifically, appellee argued that appellant failed to file her lawsuit within 180 days, failed to allege criminal activity, failed to properly report her complaints to her supervisor or another supervisory official, and failed to report her complaints orally and in writing, all of which are required to sustain a claim pursuant to R.C. 4113.52. Additionally, appellee argued that appellant's public policy claims failed because appellant's allegations do not "jeopardize" any public policy. The trial court found that appellant failed to file her whistleblower and public policy claims within the applicable statute of limitations and granted summary judgment in favor of appellee on these claims.

{¶ 4} On appeal, appellant asserts the following two assignments of error:

[1.] THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON PLAINTIFF'S "WHISTLEBLOWER" CLAIM ON THE GROUND THAT IT WAS TIME-BARRED. THE COURT ERRED WHEN THE FACTS CLEARLY SHOW THAT PLAINTIFF DID NOT RECEIVE "FINAL AND UNEQUIVOCAL NOTICE" OF HER TERMINATION UNTIL JANUARY 2, 2003, AND THUS HER COMPLAINT WAS TIMELY FILED ON JUNE 27, 2003, WITHIN THE 180 DAYS REQUIRED BY R.C. 4113.52(D).

\*2 [2.] THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON PLAINTIFF'S *Greeley* CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF DID NOT HAVE A *Greeley* CLAIM SINCE SHE HAD NOT COMPLIED WITH R.C. 4113.52, CONTRARY TO THE OHIO SUPREME COURT RULING IN *PYLINTSKI V. BROCAR PRODUCTS, INC.,* (2002), 94 Ohio St.3d 77, 760 N.E.2d 385.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

{¶ 5} Civ.R. 56(C) states that summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 6} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-59, 604 N.E.2d 138.

{¶ 7} Appellate review of summary judgments is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See *Dresher,* supra; *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327.

{¶ 8} The trial court found that appellant's claims were barred by the statute of limitations found in R.C. 4113.52. According to R.C. 4113.52(D), a claim must be brought within 180 days "after the date the disciplinary or retaliatory action was taken." It is undisputed that appellee notified appellant that she was terminated from employment on November 11, 2002. Appellant did not work after that date, nor did she receive any pay for work after that date. Pursuant to appellee's policy, appellant requested a review of her termination. Appellant was made aware that her appeal had been denied sometime in early December 2002, and received written confirmation to this affect on January 2, 2003. Since this lawsuit was filed on June 27, 2003, 228 days after appellant was notified of her termination on November 11, 2002, appellee argues that appellant's claims are barred by the statute of limitations. However, appellant argues that the statute of limitations did not begin to run until appellant received written confirmation of appellee's decision regarding her appeal, which occurred on January 2, 2003. Thus, according to appellant, she had until July 1, 2003 to file her claim.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

**\*3** {¶ 9} In *Internatl. Union of Elec., Radio & Machine Workers, Local 790 v. Robbins & Meyers, Inc.* (1976), 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427, the United States Supreme Court held that equitable tolling is not permitted to extend the statute of limitations to file a wrongful termination lawsuit while an employee pursues an internal grievance process regarding her termination. See, also, *Delaware State College v. Ricks* (1980), 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431; *Kessler v. Bd. of Regents* (C.A.6, 1984), 738 F.2d 751; *Wiley v. Adjutant General's Dept.* (Sept. 1, 1994), Franklin App. No. 94AP102-176, 1994 Ohio App. LEXIS 3822. In *Robbins & Meyers,* the plaintiff appealed her termination through the procedures set forth in the collective bargaining agreement. After losing her appeal, she filed a discrimination charge against her employer with the Equal Employment Opportunity Commission ("EEOC"). The statute of limitations for filing a charge with the EEOC was 90 days. Plaintiff's EEOC claim was filed within 90 days of the conclusion of the grievance process, but not within 90 days from the date of her termination. The plaintiff in *Robbins & Meyers* argued that the grievance procedure postponed the date on which the firing termination took place, and thus, the final occurrence for purposes of filing a claim with the EEOC occurred at the conclusion of the internal appeals process.

{¶ 10} The United States Supreme Court rejected plaintiff's arguments and held that absent an explicit contractual agreement, the actual date of termination would be the relevant date of firing, not the date the appeal was decided. Specifically, the court stated, "[w]hile the parties could conceivably have agreed to a contract under which management's ultimate adoption of a supervisor's recommendation would be deemed the relevant statutory 'occurrence,' this was not such a contract." Id. at 234.

{¶ 11} However, appellant argues that she has not, and does not advance a tolling argument as the plaintiff did in *Robbins & Meyers.* Instead, appellant argues that appellee's own policies set forth when the triggering "final event" occurs for statutes of limitations purposes. The language that appellant directs us to is the language in appellee's internal Human Resources manual.

{¶ 12} Appellee has two policies that explain its internal appeals process. One is found in appellee's employee handbook and the other is found in appellee's internal Human Resources manual. The relevant portion of appellee's employee handbook states:

> If you are not satisfied with the response of your vice president, you may appeal your problem further. This appeal must be initiated within three working days from the date you receive the response. This is done by informing the Human Resources representative of your desire to go to the next step. Disciplinary actions are referred to the Problem Review Committee. After a problem review hearing, the committee will make recommendation in writing, to your senior operating officer (normally within three working days). The Human resources representative will inform you of the senior operating officer's final decision.

**\*4** (Exhibit A to appellant's Dec. 12, 2003 brief.)

{¶ 13} The relevant portion of appellee's internal human resources manual states:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

Step 5-Final Decision

[1.] The senior operating officer or designee reviews the findings and recommendations of the review committee and issues a final decision. Note: This decision is normally issued within three (3) business days but can be extended if further investigation is warranted. The time frame for response should not exceed one week.

[2.] The senior operating officer communicates the final decision to the employee in writing. A copy of the letter is forwarded to the area vice president, the department director, and Human Resources.

(Exhibit F to appellant's May 7, 2004 brief.)

[1] {¶ 14} The trial court relied only on the Employee Handbook, and stated, "nothing in that section indicates that the Human Resource representative must inform the terminated employee in writing. The policy merely states that the employee must be informed. The policy clearly states that the review committee would make its recommendation in writing, but a similar requirement is not placed on the CEO or the Human Resources representative." (Aug. 10, 2004, Decision, at 6.) To the extent that the trial court relied only on appellee's Employee Handbook and found that the policy did not require the senior operating officer's final decision to be communicated to the employee in writing, the trial court did err. However, as will be discussed, such error was harmless.

[2] {¶ 15} Appellant asserts that the Human Resources Manual sets forth that the "final event" to trigger the statute of limitations occurs when the employee is notified of the appeal outcome in writing by the senior operating officer. However, we find that appellant's position advances a clear misinterpretation of the Human Resources Manual.

{¶ 16} Initially we note that while appellee's policy provides for a review process, there is no explicit language in the policy to suggest that such review tolls any statutes of limitations. Therefore, pursuant to *Robbins & Meyers,* the statute of limitations would have begun to run on November 11, 2002, the date of appellant's termination. However, even if the policy is construed so as to find contractual language that the appeals process has to be complete before a termination is final, we find that appellant's interpretation of the policy, i.e., that the termination is not final until the employee *receives* the final decision is incorrect. The policy does not "unequivocally state that no termination has occurred until the employee has been notified of same in writing by the senior operating officer after the completion of the internal review process," as advanced by appellant. (Jan. 10, 2005, Brief, pgs.11-12.) Rather, the Human Resources Manual states in Step 5, paragraph one that the "senior operating officer or designee reviews the findings and recommendations of the review committee and issues a final decision." The next paragraph states that the "senior operating officer communicates the final decision to the employee in writing." Nowhere in this policy, or the employee handbook, does it state that the decision is not final *until it is received by the employee* as appellant suggests. Therefore, the decision is final when it is made by the senior officer, not when it's received. See *Gleich v. J.C. Penney Co.* (Aug. 8, 1985), Franklin App. No. 85AP-276, 1985 Ohio App. LEXIS 8441 (holding that discharge in the context of firing an employee con-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

templates a unilateral act by an employer without the consent of an employee, thus the date of termination was the date employee was terminated, not when the employee received written notice of such).

**\*5** {¶ 17} The senior operating officer issued a decision on November 27, 2002. Through various e-mail communications, it is undisputed, that at the very latest, on December 21, 2002, appellant was aware that not only was her employment terminated, but that her appeal had been denied. Therefore, as stated by the trial court, even taking the latest date available to appellant, December 21, 2002, appellant did not file her complaint within the 180 day statute of limitations of R.C. 4113.52.

[3] {¶ 18} Even if appellant had filed her claims within the statute of limitations, we would still affirm the trial court's granting of summary judgment on appellant's whistleblower claims because appellant did not allege any criminal offense as required by R.C. 4113.52. The trial court did not address this issue; however, when reviewing a summary judgment motion, we stand in the shoes of the trial court and conduct an independent review of the record. Therefore, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to address it. *See Dresher, supra; Coventry, supra.*

{¶ 19} R.C. 4113.52(A)(1)(a) states in relevant part:

If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

{¶ 20} Appellee argues that the statute requires an allegation of criminal activity, and that in this case, appellant has not alleged any such conduct. Therefore, it is appellee's position that appellant's claims fail because they are not in compliance with R.C. 4113.52. Appellee submits that the statute states that an employee must report a violation that:

[a.] "is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety," or

[b.] "is a felony."

{¶ 21} It is appellant's position that the proper reading of the statute does not require criminal activity. In other words, appellant avers that a reported violation must be one that is:

[a.] "a criminal offense that is likely to cause an imminent risk of physical harm to person," or

[b.] "a hazard to public health or safety," or

[c.] "a felony."

{¶ 22} In support of her position, appellant relies on *Fox v. Bowling Green*

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

(1996), 76 Ohio St.3d 534, 668 N.E.2d 898. However, we find that *Fox* is not dispositive on the issue before this court, which is whether R.C. 4113.52 requires criminal activity.

***6** {¶ 23} In *Fox,* the Ohio Supreme Court held that in order "to gain the protection of R.C. 4113.52(A)(3), an employee need not show that a co-worker had actually violated a statute, city ordinance, work rule, or company policy; it is sufficient that the employee had a reasonable belief that a violation occurred." Id. at 537, 668 N.E.2d 898. The issue in *Fox* was whether a violation actually had to have occurred or whether it was sufficient that the employee had a reasonable belief that a violation occurred in order to gain the protection of the whistleblower statute. In fact, a close reading of *Fox* actually supports appellee's position. In addressing the sufficiency of an employee's allegation, the court stated, that "if an employee reports to his employer that a fellow employee is violating a state statute and that the violation is a criminal offense *and* is likely to cause a hazard to public health, each informational component of that report-the violation, the criminality, and the risk to public safety-is "information so reported" under R.C. 4113.52(B)." Id. at 538, 668 N.E.2d 898. (Emphasis added.)

{¶ 24} This language from *Fox* was used by the Sixth Circuit Court of Appeals in its analysis of the very issue that is before this court. *Brooks v. Martin Marietta Util. Serv. Inc.,* (C.A.6th, 1998) No. 97-4068, 1998 U.S.App. LEXIS 25824. In *Brooks,* the court analyzed R.C. 4113.52 as follows:

> Appellant presents us with an interesting interpretational question. Does the statute mean that the individual must reasonably believe the violation is either (a) a criminal offense that is likely to cause either (i) an imminent risk of physical harm to persons or (ii) a hazard to public health or safety, OR (b) is a felony ("the first interpretation")? Or does it mean that the violation is either (a) a criminal offense that is likely to cause an imminent risk of physical harm to persons, OR (b) a hazard to public health or safety, OR (c) a felony ("the second interpretation")? Put another way, does the employee have to believe that a violation that is a hazard to public health or safety must also be criminal?
>
> The first interpretation of the statute is correct. First, it is grammatically proper. The use of "either ... or" generally indicates that a binary relationship exists between the clauses that follow "either" ( *i.e.,* that there are two alternatives, not three). Additionally, the word "is" is used only before the words "a criminal offense" and "a felony," it is not used before the words "a hazard." This implies that the drafters of the statute did not mean that "a hazard to public health or safety" was to be an independent, third "option."
>
> Next, the first interpretation of the statute is the one that makes logical sense. On the second interpretation, the standard for a whistleblower exposing acts that present a non-particularized hazard to public health or safety is lower than the standard for whistleblowers exposing acts that will cause imminent harm to persons, which seems contrary to reason. One would expect the lower hurdle in cases of imminent harm.
>
> ***7** Third, this reading of the statute comports with language used by the Ohio Supreme Court in *Fox v. Bowling Green,* 76

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

Ohio St.3d 534, 668 N.E.2d 898 (1996). The *Fox* court, interpreting sections (A)(3) and (B) of § 4113.52, said that "if an employee reports to his employer that a fellow employee is violating a state statute and that the violation is a criminal offense *and* is likely to cause a hazard to public health, each informational component of that report-the violation, the criminality, and the risk to public safety-is 'information so reported' under § 4113.52(B)." 668 N.E.2d at 901 (emphasis added). If the second interpretation of § 4113.52(A)(1)(a) were correct, the *Fox* court would have used "or" in place of the italicized "and."

Id. at 12-14.

{¶ 25} The reasoning in *Brooks* was recently confirmed in Kelly v. Lambda Research, Inc. (C.A.6, 2004), 89 Fed. Appx. 535 (Boggs, concurring), and has been followed by a number of courts in both federal and Ohio state courts. See Black v. Columbus Pub. Sch . (S.D.Ohio 2000), 124 F.Supp.2d 550; *Long v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.* (N.D.Ohio 1999) Case No. 3:98CV7037, 1999 U.S. Dist. LEXIS 14196; McGuire v. Elyria United Methodist Village (2003), 152 Ohio App.3d 186, 787 N.E.2d 53; Doody v. Centerior Energy Corp. (2000), 137 Ohio App.3d 673, 739 N.E.2d 851.

{¶ 26} Appellant relies on *O'Brien v. Libbey Owens Ford* (Oct. 31, 1997), Lucas App. No. L-96-333, which held that when seeking protection under R.C. 4113.52, it is not necessary for a plaintiff to have reasonably believed that the violation was a criminal offense; instead, a plaintiff can come within the statute if a plaintiff reasonably believed that the violation was a hazard to public health or safety. In other words, under *O'Brien,* criminality is not required to obtain protection pursuant to R.C. 4113.52. We do not find the reasoning in *O'Brien* to be persuasive. We do, however, find the reasoning of the Sixth Circuit in *Brooks* to be persuasive, and hereby adopt its reasoning. Such interpretation of R.C. 4113.52 is not only grammatically proper, it is logical.

{¶ 27} Therefore, because appellant did not demonstrate that she had a reasonable belief in a criminal offense, appellant's claims pursuant to R.C. 4113.52 fail as a matter of law. Accordingly, appellant's first assignment of error is overruled.

[4] {¶ 28} In her second assignment of error, appellant asserts that the trial court erred in granting summary judgment in favor of appellee on appellant's *Greeley* claim for wrongful discharge in violation of public policy. Greeley v. Miami Valley Maintenance Contrs., Inc. (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. The trial court found that appellant's public policy claim was based solely on the public policy contained in the whistleblower statute. Therefore, because appellant failed to strictly comply with the mandates of the whistleblower statute, i.e., the 180 day statute of limitations, the trial court held that appellant's public policy claims failed as a matter of law. It is appellant's position that there are grounds independent of the whistleblower statute to support her claim for wrongful discharge in violation of public policy.

**\*8** {¶ 29} In Ohio, absent an employment contract, the employer-employee relationship is considered at-will. *Greeley, supra.* Thus, an employer may terminate an employee for any lawful reason, and an employee may leave the relationship for any reason. Id. However, an exception to the traditional at-will employment rule exists where an employee is terminated

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

wrongfully in violation of public policy. Id. Public policy is generally discerned from the United States and Ohio Constitutions, statutes, administrative rules and regulations, and common law. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51. However, the public policy alleged to have been violated must be of equal "serious import as the violation of a statute." Id. at 384, 639 N.E.2d 51.

{¶ 30} To state a claim of wrongful termination in violation of public policy, a plaintiff must satisfy the following elements: (1) a clear public policy existed and was manifested in the federal or state constitution, statute, administrative regulation, or common law; (2) terminating employees under circumstances such as those involved in the plaintiff's termination would jeopardize the public policy; (3) plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer lacked overriding legitimate business justification for the dismissal. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653. The first two prongs are questions of law for the court while the latter two prongs are questions for the trier of fact. Id.

{¶ 31} Accordingly, we must first address whether or not a clear public policy exists to support appellant's claim. In her complaint, appellant alleges that appellee violated Ohio's clear public policy contained in "R.C. 4113.52 as well as Ohio common law ." (July 15, 2003, Amended Complaint, pg. 2.)

{¶ 32} To sustain a public policy claim based on R.C. 4113.52, appellant must strictly comply with the mandates of that legislation in order to obtain relief. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308. Because we have found that appellant did not strictly comply with the mandates of R.C. 4113.52, appellant's public policy claims based on that legislation must fail.

{¶ 33} However, appellant correctly asserts that R.C. 4113.52 does not preempt a common law cause of action against an employer that discharges an employee for a reason that contravenes clear public policy. See *Kulch, supra.* Further, appellant correctly asserts that a plaintiff may bring a cause of action pursuant to a statutory violation, common law, or both. However, a plaintiff is not entitled to recovery under both causes of action. Id. at paragraph 5 of the syllabus.

{¶ 34} Thus, appellant is entitled to bring a public policy tort claim regardless of whether she complied with R.C. 4113.52, as long as she can identify a source of public policy separate from the public policy embodied in R.C. 4113.52. *McNett v. Hardin Community Federal Credit Union* (2004), Allen App. No. 1-04-46, 2004-Ohio-6957 citing *Iberis v. Mahoning Valley Sanitary District* (Dec. 21, 2001), Trumbull App. No.2000-T-0036, 2001-Ohio-8809. Appellant has to show that her termination violated some clear public policy in Ohio, not outlined in R.C. 4113.52.

**\*9** {¶ 35} Appellant lists several statutes as "examples of statutes which protect workplace health and safety." (Appellant's Jan. 10, 2005, Reply Brief, pgs. 27-28.) However, other than casually mentioning these statutes, appellant does not set forth the clear public policy in Ohio governing the facts of this case. Appellant merely keeps reiterating that there are "clearly articulated adequate independent grounds in support of her claim for wrongful discharge in violation of public policy that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case: 2:10-cv-00135-ALM-NMK Doc #: 95-21 Filed: 04/08/13 Page: 11 of 11  PAGEID #: 2404

Page 11

Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142
**(Cite as: 2005 WL 1482549 (Ohio App. 10 Dist.))**

were not contingent on her whistleblower claims," and that the trial court erred in applying the elements of R.C. 4113.52 to her public policy claim. Id. at P25-26. However, appellant still does not provide this court with "a *clear* public policy" upon which the court should have relied. Collins, supra at 69, 652 N.E.2d 653 (emphasis added). Therefore, we find that appellant has not established a clear public policy applicable to the facts of this case that exist separate and apart from the dictates of R.C. 4113.52. As such, we find that appellant's public policy claims based on Ohio common law fail as a matter of law. Accordingly, appellant's second assignment of error is overruled.

{¶ 36} For the foregoing reasons, we overrule appellant's first and second assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.

*Appellant's assignments of error overruled; judgment affirmed.*

DESHLER, J., concurs.
SADLER, J., concurs separately.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
SADLER, J. concurring separately.
SADLER, J.

I agree with the majority's rationale in overruling appellant's first assignment of error and affirming the granting of summary judgment by the trial court based on appellant's claims being time barred pursuant to the statute of limitations set forth in R.C. 4113 .52. Because this conclusion is dispositive of the first assignment of error, I do not join in the balance of the discussion by the majority regarding this assignment as the question discussed is rendered moot. I concur in the rationale and holding by the majority as to the second assignment of error.

Ohio App. 10 Dist.,2005.
Lesko v. Riverside Methodist Hosp.
Not Reported in N.E.2d, 2005 WL 1482549 (Ohio App. 10 Dist.), 2005 -Ohio- 3142

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.