GRADUATE MEDICAL EDUCATION AGREEMENT
MOUNT CARMEL HEALTH SYSTEM

This Agreement is made and entered into effective July 1, 2009 (the "Effective Date"), by and between Mount Carmel Health System, an Ohio nonprofit corporation (hereinafter "Hospital"), and Sunil Nayyar, MD (hereinafter "Resident Physician"). Hospital, an accredited institution for Graduate Medical Education, hereby offers to Resident Physician, and Resident Physician hereby accepts a residency position in the PGY-III postgraduate year for the year beginning July 1, 2009, and ending June 30, 2010. This offer, its acceptance, and its continuance are subject to the terms and conditions included in this Agreement and the policies and procedures included in both the Hospital Graduate Medical Education's <u>Resident Physician Handbook and Policies Manual</u> and the <u>Hospital Human Resources Policies and Procedures Manual</u>, which are accepted by both Resident Physician and Hospital as addenda to this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants set forth herein, the parties agree as follows:

1. <u>Appointment</u>. The Hospital hereby appoints Resident Physician to serve as a resident in the Internal Medicine Program for one (1) year beginning July 1, 2009.

2. <u>Responsibilities of Hospital</u>.

    2.1 <u>Compensation</u>. Hospital will pay to Resident Physician an annual stipend $50,856.00 payable in 26 installments according to the schedule established by Hospital.

    2.2 <u>Benefits</u>. Hospital will provide to Resident Physician such benefits as are provided to other resident physicians within the specialty program, including, but not limited to:

    a.  Medical and dental insurance coverage as is available to the Associates of Hospital.

    b.  Long term disability program as is available to the Associates of Hospital

    c.  Life insurance in effect for the term of this contract in an amount as is available to the Associates of Hospital.

    d.  Designated cafeteria meal stipends while on duty within Hospital.

    e.  Free parking in space designated for resident physicians.

    f.  Personal Leave Time program (i.e., vacation, sick, and holiday leave) as is available to the Associates of Hospital.

    g.  Potential eligibility for an educational allowance during the term of this agreement, and leave for educational meetings as deemed appropriate by

the Program Director of the Residency and at the sole discretion of Hospital.

h. Medical Malpractice Insurance coverage during the term of employment under the Trinity Health Professional Liability Insurance Program for any actions arising out of the scope of this contract. This coverage, however, does not extend to patient care activities outside of the scope of this contract with Trinity Health.

i. Employee Assistance Program (EAP) to provide counseling and support to resident physicians.

These benefits are subject to the provisions of the <u>Residency Physician Handbook and Policies Manual</u>.

3. <u>Responsibilities of Resident Physician</u>.

   3.1 <u>Standards of Practice.</u> Resident Physician shall act in accordance with (a) the medical standards of care that prevail in this community and nationally, (b) the applicable ethical principles of the medical profession, (c) the bylaws, policies, rules and regulations of Hospital, including, but not limited to, satisfactory completion of all mandatory in-house compliance training programs, (d) the requirements of the Joint Commission on Accreditation of Healthcare Organizations, and (e) all other applicable laws and regulations.

   3.2 <u>Ethical and Religious Directives.</u> Resident Physician shall strictly abide by the <u>Ethical and Religious Directives for Catholic Health Care Services</u>, as promulgated from time to time by the National Conference of Catholic Bishops, and shall act in accordance with the values and mission statement of Hospital.

   3.3 <u>Requirements.</u> Resident Physician shall maintain a valid State of Ohio medical license or temporary license, consistent with the regulations of the Ohio State Medical Board.

   3.4 <u>Services.</u> Resident Physician shall (a) accept those responsibilities assigned by the Program Director and/or his designee, including the clinical education rotations, active participation in structural conferences and seminars and a program of self-study, and such scholarly activity as may be appropriate to the level of training and program requirements, (b) present himself/herself in a professional manner, including appearance and behavior, and consistent with the role and status of a physician within the Mount Carmel community, (c) perform the customary services related to his/her program of training to the best of his/her ability, (d) develop a personal program of self study and professional growth with guidance from members of the teaching staff, (e) assume responsibility for teaching and the supervision of other residents and students, (f) participate in and contribute to the work of Hospital committees and councils, (g) use best efforts to

treat the patients in an efficient and cost-effective manner that doesn't compromise patient care, and (h) observe the highest quality standards in providing patient care and in personal conduct, and (i) participate in a program of Medicare compliance training.

3.5 Medical Records. Resident Physician shall complete all medical and other records, reports and documents for all patients and for all Resident Physician Services rendered for any patient, which records shall be and become part of the permanent records of Hospital. Such records shall be completed in accordance with the rules and regulations of Hospital and Hospital medical staff.

3.6 Confidentiality. Resident Physician acknowledges that during the term of this Agreement Resident Physician shall have access to and shall acquire confidential information relating to the operations of Hospital and its affiliates, and other proprietary information of Hospital and its affiliates, including, but not limited to price lists, policies, financial information, procedures, system designs, records, manuals, care paths and the like (collectively, the "Confidential Information"). Resident Physician agrees that Resident Physician shall not use or disclose Confidential Information for any reason other than to carry out the Services under this Agreement without the prior written consent of Hospital. Upon termination of this Agreement, for any reason, Resident Physician shall return any and all written information disclosed pursuant to this Agreement.

3.7 Patient Information. To the extent individually identifiable health information (referred to as "Protected Health Information" or "PHI") is used or disclosed in connection with the Services, the parties agree that such use or disclosure shall be in accordance with all applicable state and federal laws, including without limitation, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its implementing regulations (45 C.F.R. Parts 160-164). Further, Resident Physician agrees:

(i) Not to use or disclose PHI other than as permitted under this Agreement or as required by law.

(ii) To use appropriate physical, administrative and technical safeguards to prevent the use or disclosure of PHI other than as provided for by this Agreement.

(iii) To report to Hospital any use or disclosure, or security breach, of PHI in violation of this Agreement of which Resident Physician becomes aware.

(iv) To ensure that any agent to whom Resident Physician provides PHI received or created in connection with the Services agrees to the provisions of this Section.

    (v)    To make records relating to the use and disclosure of PHI received or created pursuant to this Agreement available to Hospital or to the Secretary of the Department of Health and Human Services for purposes of the Secretary determining Hospital's or Hospital's compliance with HIPAA.

4. Term and Termination.

    4.1 Term. This agreement shall commence on the Effective Date of the Agreement and shall continue for a period of one (1) year.

    4.2 Termination for Cause by Resident Physician. Resident Physician may, at his/her option, terminate this Agreement upon any material breach by the other party after thirty (30) days written notice to the breaching party of its intention to terminate the Agreement and the party receiving such notice does not correct its breach within the thirty (30) day notice period.

    4.3 Termination for Cause by Hospital. Hospital may, at its option, terminate this Agreement immediately for cause. Upon immediate termination, the Resident Physician has the option to engage the due process appeal of cited termination as described in the Residency Physician Handbook and Policies Manual.

5. Compliance with Law.

The parties to this Agreement acknowledge that they have attempted, in good faith, to comply with the laws of the United States and the State of Ohio applicable to relationships between health care providers including, but not limited to, the Social Security Act, Titles XI, XVIII or XIX, as amended, and the Medicare and Medicaid regulations or general instructions (collectively, the "Applicable Law"). In the event that: (a) there is any change in the Applicable Law (including, but not limited to, the adoption of any new legislation, or any administrative or regulatory change or any change in interpretation of the Applicable Law by any enforcement agency or court) such that this Agreement does or may violate the Applicable Law, or (b) either party to this Agreement has the reasonable belief that this Agreement does or may violate the Applicable Law, then the parties shall use their best efforts to reform or reorganize their relationship and this Agreement so as to be in compliance with the Applicable Law; provided, however, that in the event after review of the Applicable Law and good faith negotiation, the parties are unable to avoid such violation or potential violation, then either party may immediately terminate this Agreement upon written notice to the other party.

6. Excess Benefit Payments.

In the event that it is determined by any office of the Internal Revenue Service, any other federal administrative agency, or a court of competent jurisdiction that any payment made under this Agreement is an excess benefit transaction under

Internal Revenue Code Section 4958 or other federal law, (a) the Hospital may terminate this Agreement, and (b) the recipient shall immediately repay the amount determined to be an excess benefit. Such repayment does not prejudice the recipient's right to contest the validity of the determination or to seek reimbursement of a repayment if the determination is overturned.

7. Miscellaneous.

   7.1 Entire Agreement. This Agreement and the documents referenced in this Agreement constitutes the entire agreement between the parties as to the subject matter herein and supersedes all prior agreements, negotiations, or representations (whether written or oral) concerning its subject matter.

   7.2 Assignment. This Agreement is personal in nature and may not be assigned by Resident Physician. Hospital may assign this Agreement to any affiliate or successor entity.

   7.3 Amendment. This Agreement may be modified only in writing, and agreed upon and signed by both Hospital and Resident Physician.

   7.4 Notices. Any notice required or permitted by this Agreement shall be deemed given upon delivery to the party, or in lieu of personal deliver, three (3) days after being mailed by certified or registered mail, return receipt requested, postage prepaid, to the following addresses:

   (i) If to Hospital: Mount Carmel Health System Medical Education
   793 West State Street
   Columbus, Ohio 43222
   Attention: Director of Medical Education

   (ii) If to Resident Physician: _____

   _____

   _____

   or to such other address that either party may designate from time to time in I writing.

   7.5 Applicable Law. This Agreement shall be construed in accordance with and governed by the laws of the State of Ohio.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

MOUNT CARMEL HEALTH SYSTEM

BY: _____
       Signature

_John C. West_____
Printed Name

_6/30/09_____
Date

RESIDENT PHYSICIAN

BY: _____
       Signature

_Sunil Nayyar_____
Printed Name

_6/23/09_____
Date